**Theodore J. LYNN and Mary E. Lynn, Plaintiffs-Appellants,**

v.

**MEDEMA HOMES, INC., Defendant-Appellee.**

No. 80CA0443.

Colorado Court of Appeals, Div. I.

April 16, 1981.

Rehearing Denied May 28, 1981.

Certiorari Granted Aug. 17, 1981.

Michael F. Scott, P. C., Michael F. Scott, Denver, for plaintiffs-appellants.

Calkins, Kramer, Grimshaw & Harring, James S. Bailey, Jr., Denver, for defendant-appellee.

SMITH, Judge.

Plaintiffs, Theodore J. Lynn and Mary E. Lynn, appeal a judgment entered by the trial court awarding them $500 in damages against defendant, Medema Homes, Inc.,

for breach of contract, and denying other claims for relief. We affirm in part, reverse in part, and remand with directions.

This is the second appeal to this court of this case. The facts are essentially as follows. On May 9, 1976, plaintiffs entered into a contract with defendant for the purchase of a home to be constructed by Medema. In pertinent part, the contract provided that the home would be completed within one hundred twenty days from the time construction commenced, and that if construction was not completed within that time, plus a thirty day grace period, $25 per day would be paid to the Lynns as liquidated damages for each day thereafter until the house was completed, and conveyed to the Lynns. It was determined at trial that construction began on June 25, 1976, and that thus, under the contract, the home should have been completed on October 23, 1976.

On July 26, 1976, since construction efforts on their new home seemed to be making no progress, the Lynns wrote a letter to Medema requesting a construction schedule. As no response was received, the Lynns called Medema and requested an answer to their letter. Medema wrote back, simply saying that it "would stick to" the agreement. By the end of August the Lynns were very concerned that their then home would not be completed by the time they would have to vacate their current home. After an unsuccessful attempt to lease another house, the Lynns contracted to purchase another home to serve as an interim residence. At no time did the Lynns repudiate their contract with Medema.

In March 1977, this action was commenced by the Lynns seeking specific performance of their contract with Medema, and damages. On September 13, 1977, after a trial to the court, the trial court entered judgment denying Lynns' claim for specific performance and their claim for damages.

In their first appeal to this court (decided February 15, 1979—not selected for official publication) this court concluded that, inasmuch as the Lynns had fully complied with their contract, the trial court erred in failing to grant specific performance. Accordingly, the judgment was reversed and the cause was remanded for a new trial to determine plaintiffs' damages. Since the home in question had been sold to a bona fide purchaser during the pendency of the first appeal, this was the only remaining remedy for plaintiffs.

On remand, the trial court determined that the market value of the property on the date that the conveyance should have taken place, October 23, 1976, was the same as the contract price, and thus, plaintiffs were not entitled to damages based upon any appreciation of the real property. The trial court did, however, award $500 damages which represented the value of a Pinery Country Club membership that plaintiffs would have received had the property been conveyed to them. The trial court also denied plaintiffs any damages for failure to complete the home on schedule.

## I.

■ Plaintiffs first contend that the trial court erred in using the market value of the property on October 23, 1976, the anticipated date of closing, as the comparative value for determining actual damages. They argue that the "benefit of bargain" damages should have been calculated based upon the market value of the property, either on March 17, 1978, the date the property was ultimately sold to a third party, or on November 5, 1979, the date of the retrial. We agree with the Lynns' assertion that the property should have been valued as of March 17, 1978, the date after which acquisition of the property by the Lynns became impossible.

This court has previously held that where property has been sold by a vendor to a third party, thereby making specific performance impossible, the proper measure of damages is the purchaser's loss of his bargain. Bennett v. Moring, 33 Colo.App. 390, 522 P.2d 741 (1974). In Bennett this court ordered a retrial on the issue of damages to be calculated as "the market value of the property at the time the conveyance was to

take place, minus the contract price." *See Piano & Organ Warehouse, Inc. v. Wulf*, 161 Colo. 457, 423 P.2d 26 (1967).

Insofar as the rule in *Bennett* states that the measure of damages is the amount of loss sustained by the non-breaching purchaser in losing his bargain, we accept it as a correct statement of the law. We do not, however, concur with the reasoning of the trial court that the damage equation set forth in *Bennett* is applicable here.

Here, the trial court used the *Bennett* formula, choosing October 23, 1976, the date the conveyance should have been made, as the valuation date for comparative purposes. The trial court then compared the contract price with this amount and determined that the Lynns did not suffer any damages. The evidence, however, discloses that on March 17, 1978, Medema conveyed the subject property to a third party for $80,829. Considering the fact that the original sales price between the Lynns and Medema was $68,824, it is evident that if we allow the judgment of the trial court to stand, we will permit Medema to be unjustly enriched in the amount of $12,005.

It is our view that the damage equation as set forth in *Bennett*, should be modified in situations where, as here, the seller by his own conduct is unable or elects not to convey the subject matter of the contract at the date of closing, and the buyer seeks specific performance of the contract. If specific performance is granted and the buyer receives the property, he has received the equivalent of its market value on that date. On the other hand, if the buyer, although entitled to specific performance is unable to acquire the property, he is still entitled to the same comparable relief. Thus, if through no fault of his own he is compelled to accept money damages in lieu of the property, such damages should be measured by the market value of the property as of the date when specific performance becomes unavailable as a remedy. Here, that date is the date of the sale by Medema of the home in question to a third party. Only under this formulation can the plaintiff receive the same benefit of his

bargain as he would have received had he been granted specific performance. To rule otherwise would be to permit the breaching seller to reap the benefits of the appreciation in value which had accrued to the property.

Accordingly, we conclude that the Lynns are entitled to an award of damages based upon the price for which the residence was sold on March 17, 1978, less the amount still due on the original contract price. Since everything they paid was returned to them, they are entitled to the market value of $80,829, the ultimate sale price, less the $68,824 they would have been obligated to pay if they had received the house. Thus, the benefit of their bargain entitles them to judgment in the amount of $12,005, plus interest from March 17, 1978.

## II.

■ Plaintiffs next contend that the trial court erred in refusing to award them liquidated damages under a provision of the real estate contract which provided as follows:

> "If Seller fails to deliver said title and possession within the 120 days and 30 day extension specified herein, and such failure is not beyond the control or without the fault or negligence of the Seller, Seller shall pay to Purchaser liquidated damages in the amount of $25 per day until such failure is cured."

Plaintiffs argue that under this provision they are entitled to liquidated damages running from November 23, 1976, the day following expiration of the 120 days and 30 day extension and continuing until the present. While we agree that plaintiffs are entitled to liquidated damages, we are not in agreement with the time interval set forth by plaintiffs.

The contract language quoted above is clear that liquidated damages are an additional and not an alternative remedy when the buyer seeks to enforce the contract. Thus, had specific performance been granted at the conclusion of the first trial, plaintiffs would have been entitled to liquidated damages running from the time the residence was scheduled to have been complet-

ed until the day when the house was conveyed to them.

In this regard, we conclude that the liquidated damages specified in the contract are intended to compensate the buyer for the loss of his possessory right to use the property. This is an entirely different and separate contractual right from that which pertains to compensating the plaintiffs for their loss of profit resulting from an appreciation in value of the property. The earnings (or savings) plaintiffs might have realized from being able to exercise a possessory interest have nothing to do with any increase in value of the property which might accrue to them by virtue of appreciation. And, this element of damages continues to accrue so long as defendant could restore to plaintiffs their right to possession, i. e., until the date the property was sold to a third party.

Under these circumstances, an award of both the increase in value of the house and liquidated damages for loss of possession does not constitute double recovery, but rather constitutes the measure of damages that most adequately compensates plaintiffs for their loss. To rule otherwise would be to permit defendant to reduce its liability simply by refusing to perform and by ultimately making performance an impossibility.

That portion of the trial court's judgment awarding plaintiffs $500 as the value of a country club membership which would have accrued to them had they taken title to the house has not been contested on appeal. That award therefore is affirmed.

The balance of the judgment is reversed and the cause is remanded with directions to the trial court to enter a judgment for plaintiffs and against defendants in the amount of $12,005 plus $25 per day from November 23, 1976, to, but not including, March 17, 1978, together with interest on the total judgment from that date.

COYTE and VAN CISE, JJ., concur.